UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TROY MONN,

    Plaintiff,

v.   Case No. 5:20-cv-266-TKW/MJF

CENTURION OF FLORIDA, LLC, *et al.*,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Troy Monn ("Monn") initiated this action under 42 U.S.C. § 1983. He alleges that three medical professionals at Calhoun Correctional Institution ("Calhoun CI")—all employees of Centurion of Florida, LLC ("Centurion")—violated the Eighth Amendment when they failed to treat properly his detached retina. Monn also alleges that Centurion's policy of having its medical personnel screen alleged eye injuries before referring patients to a vision specialist violates the Eighth Amendment.

The facts alleged in Monn's third amended complaint, Doc. 33, fail to state a facially plausible claim against Defendants M. Marlowe and Centurion. The undersigned, therefore, recommends that Monn's claims against Defendants M. Marlowe and Centurion be dismissed with prejudice, under 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted.[1]

## I. BACKGROUND

On Thursday, June 22, 2017, Monn was experiencing "pain and severely impaired vision in [his] left eye."[2] Doc. 33 at 7. Monn's symptoms included "blurriness, darkness, distortion, flashes of light, and a curtain effect blocking part of [his] field of vision." *Id.* That same day, Monn signed up for "sick call." *Id.*

The next day, on June 23, 2017, sick call was canceled. *Id.* Monn explained his symptoms to his work supervisor, who stated that Monn's symptoms were indicative of a detached retina. *Id.* Monn then declared a medical emergency. Doc. 33 at 7. At "medical," Monn described his symptoms to Defendant G. Grantham, a nurse at Calhoun CI. *Id.* at 7-8. Monn also asked whether his symptoms stemmed from a detached retina. *Id.* at 8. Monn alleges that Grantham did not examine him. *Id.* Grantham stated that even if Monn had a detached retina, Monn would not be examined by a physician over the weekend. *Id.* Grantham advised Monn to sign up to visit sick call on Monday, June 26, 2017. Doc. 33 at 8.

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

[2] These facts are drawn from Monn's third amended complaint and are presumed to be true for purposes of this report and recommendation.

Consistent with Grantham's instructions, on June 26, 2017, Monn went to sick call, and he was examined by Defendant M. Marlowe, a nurse at Calhoun CI. *Id.* Monn described his symptoms to Marlowe and asked whether his symptoms stemmed from a detached retina. *Id.* Marlowe administered a "cursory vision test using a standard wall chart," but she did not write down any of Monn's symptoms. *Id.*

After the examination, Marlowe asked Monn to sign a referral form so that Monn could see an optometrist to update the prescription lenses in his eyeglasses. *Id.* at 8-9, 12. The referral was "routine," which according to Monn meant that it would take months to schedule an appointment with an optometrist. Doc. 33 at 8. Nine days later, Monn's appointment with the optometrist was scheduled for October 3, 2017. *Id.* at 9.

On July 13, 2017, Monn had an appointment with Defendant Dr. S. Vilchez, a doctor at Calhoun CI. *Id.* Although Monn's appointment was unrelated to his left eye, Dr. Vilchez agreed to discuss Monn's vision problems. *Id.* Monn described his symptoms and asked about a detached retina. *Id.* Monn alleges that Dr. Vilchez ignored Monn's symptoms and "failed to document clear and compelling signs of [a] detached retina." Doc. 33 at 9.

On October 12, 2017, Monn was evaluated by an unspecified optometrist. *Id.* Monn alleges that this optometrist, and later a retina specialist, diagnosed Monn with

a detached retina. *Id.* The retina specialist performed three laser surgeries to repair Monn's detached retina, but the surgeries were unsuccessful. *Id.* According to Monn, he is now permanently blind in his left eye. *Id.* at 10.

Monn alleges that his delayed treatment, and therefore his blindness, was caused by Centurion's policy of having alleged eye injuries screened by its medical personnel before patients are referred to a vision specialist. Doc. 33 at 10. According to Monn, this policy is "medically unnecessary." *Id.*

Monn asserts an Eighth-Amendment claim of deliberate indifference to a serious medical need against all Defendants. *Id.* at 12-14. Monn is suing Grantham, Marlowe, and Dr. Vilchez in their individual capacities. *Id.* at 3-4. As relief, Monn requests

(1) $1,000,000 in compensatory and punitive damages from each individual Defendant: Grantham, Marlowe, and Dr. Vilchez;

(2) $5,000,000 in compensatory and punitive damages from Centurion; and

(3) injunctive relief in the form of changes in Centurion's policies regarding the "triage, diagnosis, and treatment of vision problems."

*Id.* at 15.

## II. STANDARD

Because Plaintiff is a prisoner, the court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the

complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see id.* § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2019). Under Rule 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* That is, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

## III. DISCUSSION

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition governs the "treatment a prisoner receives in prison." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Because an inmate "must rely on prison authorities to treat his medical needs," prison officials must provide medical care for inmates, and failure to do so may violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A "prison official's 'deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Farrow*, 320 F.3d at 1243 (quoting *Estelle*, 429 U.S. at 104 (quotation marks and citations omitted)). But "not every claim by a prisoner that he has not received adequate medical treatment" asserts an Eighth Amendment violation. *Id.* (citation omitted).

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). To state an Eighth-Amendment claim of deliberate indifference to a serious medical need, a plaintiff must plausibly allege that:

    (1) he had a serious medical need;

    (2) the defendant was deliberately indifferent to that need; and

>     (3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007). This claim includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *see Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (noting that an official must act with a "sufficiently culpable state of mind" and the alleged wrongdoing must be "objectively 'harmful enough'" to violate the Constitution) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

"Deliberate indifference is *not* a constitutionalized version of common-law negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (citation omitted); *Farrow*, 320 F.3d at 1245 (noting that deliberate indifference is a higher standard than simple negligence). Instead, an alleged wrongdoer is deliberately indifferent to a plaintiff's serious medical need if the wrongdoer (1) had "subjective knowledge of a risk of serious harm," (2) disregarded that risk, and (3) acted in a manner "more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32

(11th Cir. 2013). Deliberate indifference "is the equivalent of recklessly disregarding a substantial risk of serious harm." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation marks omitted); *Nam Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (noting that the official must know "that an inmate is in serious need of medical care" and fail or refuse "to obtain medical treatment for the inmate"). Such reckless disregard includes "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham*, 654 F.3d at 1176 (citing *Brown*, 387 F.3d at 1351).

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Thus, a mere difference of opinion between a doctor and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference. *Id.* at 1505.

"The question of whether additional diagnostic techniques or alternate forms of treatment should be employed constitutes 'a classic example of a matter for medical judgment' and does not support an Eighth Amendment claim." *Clas v. Torres*, 549 F. App'x 922, 923 (11th Cir. 2013) (quoting *Estelle*, 429 U.S. at 107).

Thus, when an inmate has received some medical treatment, there will be a violation of the Eighth Amendment only when the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1507. That is because the Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Id.* at 1510 (quotation omitted).

1. ***Plaintiff Fails to State a Plausible Claim Against Marlowe***

Monn alleges that Marlowe performed a "cursory" eye examination using a "standard wall chart" and failed to document any of Monn's alleged symptoms. Doc. 33 at 8. According to Monn, Marlowe "deliberately and intentionally" omitted Monn's alleged symptoms from the form that Marlowe completed. *Id.* at 7-8. Monn further alleges that Marlowe asked him to sign a "routine" form for a referral to an optometrist. *Id.* at 9, 12.

It is undisputed that Monn received some medical attention from Marlowe. She performed an eye examination and referred Monn to an optometrist. *Id.* at 8-9, 12. Although Monn now alleges that Marlowe failed to document any of his symptoms, Monn previously alleged that Marlowe noted "decreased visual acuity" in Monn's left eye and some of his symptoms: "[Left] eye sudden blurred vision ≈ 10 days . . . OD 20/25 OS 20/200." Doc. 25 at 9. Even if Marlowe erred by classifying Monn's referral as "routine," her error would be mere negligence and, at

most, medical malpractice under state law. As noted above, mere negligence and medical malpractice are insufficient to state a constitutional violation. *Hoffer*, 973 F.3d at 1271 (noting that "[d]eliberate indifference is *not* a constitutionalized version of common-law negligence") (citation omitted); *Farrow*, 320 F.3d at 1245 (noting that deliberate indifference is a higher standard than simple negligence). Furthermore, Monn's allegations that Marlowe "deliberately and intentionally" omitted his alleged symptoms from the referral form are legal conclusions and not presumed to be true. *Dean v. Warren*, 12 F.4th 1248, 1256 (11th Cir. 2021) (citation omitted).

The medical attention that Marlowe provided was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1507; *Clas*, 549 F. App'x at 923 (noting that "[t]he question of whether additional diagnostic techniques or alternate forms of treatment should be employed constitutes 'a classic example of a matter for medical judgment' and does not support an Eighth Amendment claim") (citation omitted); *Bingham*, 654 F.3d at 1176 (noting that deliberate indifference arises from, among other things, "medical care that is so cursory as to amount to no treatment at all") (citing *Brown*, 387 F.3d at 1351). Thus, despite three opportunities to amend his complaint, Monn has failed to state a plausible Eighth-Amendment claim of deliberate indifference to a serious medical need against Marlowe. The undersigned,

therefore, recommends that Monn's Eighth-Amendment claim against Marlowe be dismissed.

### 2. *Plaintiff Fails to State a Plausible Claim Against Centurion*

Monn also asserts an Eighth-Amendment claim against Centurion. Doc. 33 at 13-14.

It is well established that municipalities may not be held liable in a section 1983 action under a *respondeat superior* theory. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see DiPietro v. Med. Staff at Fulton Cnty. Jail*, 805 F. App'x 793, 796 (11th Cir. 2020) (noting that the standard for a municipality also applies to a private entity that is contracted to provide medical services to inmates). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To impose section 1983 liability on a municipality, and therefore Centurion, a plaintiff must establish: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A policy is a decision that is officially adopted

by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)).

To show "deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of flagrant, persistent pattern of violations." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (citation omitted). Additionally, the policy must be the "moving force" behind the alleged constitutional violation. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (en banc)); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (noting that there must be a "'direct causal link' between the [policy] and the right violation") (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 399).

Monn asserts that Centurion's alleged policy violates the Eighth Amendment because it requires Centurion's medical personnel to screen eye injuries before patients are referred to vision specialists. Doc. 33 at 10. Monn alleges that the policy resulted in a multiple-month delay in his treatment and, ultimately, the blindness in his left eye. *Id.* Monn concludes there is "no valid medical reason" for this policy. *Id.* at 14.

Although Centurion's alleged policy required that Monn first be examined by Centurion's medical personnel, Monn has not plausibly alleged that Centurion's policy was deliberately indifferent to Monn's constitutional rights or that it caused his injury. *McDowell*, 392 F.3d at 1289 (noting that the policy must, among other things, cause the alleged injury) (citing *Harris*, 489 U.S. at 388); *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521-22 (7th Cir. 2019) (holding that a plaintiff failed to establish that a corporation's policy "blocked [the plaintiff's] chance for surgical correction"). At most, Monn has alleged that Marlowe was negligent in examining Monn and concluding that he needed a "routine," rather than an "urgent," referral to an optometrist. But that is insufficient to hold Centurion liable under section 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality.").

Despite three opportunities to amend his complaint, Monn has failed to allege sufficient facts to plausibly suggest that Centurion has a policy or custom that caused Monn's alleged injury. Monn's Eighth-Amendment claim of deliberate indifference to a serious medical need against Centurion, therefore, should be dismissed.

### IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **DISMISS with prejudice**, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), Plaintiff Troy Monn's Eighth-Amendment claim against Defendant M. Marlowe for failure to state a claim upon which relief can be granted.

2. **DISMISS with prejudice**, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), Plaintiff Troy Monn's Eighth-Amendment claim against Defendant Centurion for failure to state a claim upon which relief can be granted.

3. Recommit this case to the undersigned to address Plaintiff Troy Monn's remaining individual-capacity Eighth-Amendment claims against Defendants G. Grantham and Dr. S. Vilchez.

At Pensacola, Florida, this 15th day of March, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**